IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| JOHN JOSEPH BAUMGARTNER | § | |
| | § | |
| v. | § | 2:09-CV-015 |
| | § | |
| UNITED STATES OF AMERICA | § | |

**REPORT AND RECOMMENDATION TO DENY MOTION
TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

Defendant JOHN JOSEPH BAUMGARTNER has filed a Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255. For the reasons set forth, the undersigned Magistrate Judge is of the opinion defendant is not entitled to any relief and recommends the Motion to Vacate, Set Aside, or Correct Sentence be DENIED.

I.
FACTUAL AND PROCEDURAL BACKGROUND

In September 2006, defendant, while residing in Amarillo, Texas, obtained a refinancing mortgage loan from Country Wide Mortgage in the amount of $840,000.00, such loan being secured by property in California. Defendant netted or received $202,113.27 cash back in the transaction. After defendant received the monies from the refinance, he put some of the funds into his account at Caesar's Palace Casino in Las Vegas, Nevada. Defendant was subsequently charged with and convicted of money laundering and of making false representations in obtaining the loan. There appears to be no dispute that defendant Baumgartner timely paid all mortgage payments and that Country Wide Mortgage did not ever seek any retribution from defendant. It is likewise undisputed the California property securing the loan was worth approximately $1.2 million, well over the $840,000.00 borrowed.

On April 28, 2008, the defendant pled guilty to money laundering, i.e. engaging in monetary transactions in property derived from unlawful activity. *United States v. Baumgartner*, 2:08-CR-014, Plea Agreement, doc. 29, pg. 1 (N.D. Tex. Apr. 28, 2008). Defendant was sentenced to serve twenty-four months' incarceration, followed by three years of supervised release and was ordered to pay $202,113.27 in restitution. *Id.*, Judgment, doc. 35, pgs. 2, 4 (N.D. Tex. Aug. 1, 2008). Defendant did not appeal the judgment, but filed a motion pursuant to 28 U.S.C. § 2255 on January 20, 2009. In his initial 2255 motion, defendant failed to raise cognizable § 2255 claims, and this Court recommended the motion be denied. In response to the Report and Recommendation, defendant filed a Motion to Amend, which this Court granted. After filing his amended § 2255 motion on August 3, 2009, the Court withdrew its Report and Recommendation, ordered the United States to respond, and held an evidentiary hearing.

II.
DEFENDANT'S ALLEGATIONS

In his amended § 2255 motion defendant presents the following grounds in support of his contention that his conviction and sentence were imposed in violation of the Constitution or laws of the United States:

1. Trial counsel failed to directly appeal the trial court's judgment, despite defendant's request that counsel do so.

2. The Court incorrectly enhanced defendant's sentence.

3. The Court erred in ordering restitution where there was no actual or intended loss.

4. The Court erred by not deducting the fair market value of the property from the loan payments made by defendant when determining loss for enhancement purposes.

5. The Court applied the incorrect enhancement provision of the Sentencing Guidelines, resulting in an incorrectly increased sentence and a violation of the Plea Agreement.

6. The United States Department of Justice has failed to recognize the Court's restitution payment and commencement schedule.

7. Defendant received ineffective assistance of counsel because his attorney:
   a. said he would not represent defendant should defendant proceed to trial;
   b. failed to provide defendant with evidence establishing defendant's guilt;
   c. failed to notify a witness, who was willing to testify on defendant's behalf at the sentencing hearing, of the date of the sentencing hearing.

## III.
## MERITS OF DEFENDANT'S ALLEGATIONS

Only defendant's first and seventh grounds of error are cognizable in a 28 U.S.C. § 2255 motion. All of defendant's other claims, grounds two, three, four, five, and six, are not cognizable.

### A. Ineffective Assistance of Counsel

In his first and seventh grounds of error, defendant contends he received ineffective assistance of counsel, in violation of the Sixth Amendment. Defendant's first ground and one claim in his seventh ground occurred post guilty plea. Two of the claims in his seventh ground occurred prior to the plea. Because "[a] voluntary guilty plea waives all nonjurisdictional defects," *United States v. Glinsey*, 209 F.3d 389, 392 (5th Cir. 2000), a reviewing court's main concern is whether the petitioner's guilty plea was voluntary. A guilty plea must be based on a "voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985); *United States v. Cavitt*, 550 F.3d 430, 441 (5th Cir. 2008) (applying the *Hill* analysis in reviewing a claim under 28 U.S.C. § 2255).

> When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

*Tollett v. Henderson*, 411 U.S. 258, 266, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973).

A defendant who pled guilty may receive federal habeas corpus relief if he can demonstrate ineffective assistance of counsel rendered his guilty plea involuntary. *See Hill*, 474 U.S. at 58, 106 S.Ct. at 370. To prove such ineffective assistance of counsel, a petitioner must demonstrate (i) deficient

performance by counsel and (ii) resulting prejudice. *Id.*, 106 S.Ct. at 370. An attorney's performance is deficient if it "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). A petitioner alleging ineffective assistance of counsel must show counsel made errors "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687, 104 S.Ct. at 2064. A substantial amount of deference is accorded counsel's judgment. *Id.* at 689, 104 S.Ct. at 2065. "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59, 106 S.Ct. at 370.

1. Failure to File Notice of Appeal

In his first claim, and what the undersigned classifies as his most critical claim, defendant contends his attorney, Mr. William Kelly, failed to file a notice of appeal as defendant requested. This claim is based on events occurring after defendant's guilty plea. Therefore this Court is able to review the merits of the claim. *See Tollett*, 41 U.S. at 266, 93 S.Ct. at 1608.

The Supreme Court has long held "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 477, 120 S.Ct. 1029, 1035, 145 L.Ed.2d 985 (2000). When a defendant fails to specifically ask his attorney to file a notice of appeal, however, a reviewing court must determine whether counsel consulted with the defendant, "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id.* at 478, 120 S.Ct. at 1035. If the attorney did consult with the defendant, the attorney "performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Id.*, 120 S.Ct. at 1035.

If counsel has not consulted with the defendant regarding whether to appeal, the question then becomes "whether counsel's failure to consult with the defendant itself constitutes deficient performance." *Id.*, 120 S.Ct. at 1035. Counsel's failure to consult with a defendant about an appeal is not necessarily unreasonable. *White v. Johnson*, 180 F.3d 648, 652 (5th Cir. 1999). "[C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal . . . or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Roe*, 528 U.S. at 480, 120 S.Ct. at 1036. Once a defendant establishes counsel's performance was deficient, he must demonstrate he suffered prejudice as a result of the deficient performance. To demonstrate prejudice in the context of counsel's failure to file a notice of appeal, a defendant must show that "but for counsel's deficient performance, he would have appealed." *Id.* at 484, 120 S.Ct. at 1038. He is not required to show the appeal would have been successful. *Id.* at 459, 120 S.Ct. at 1040.

At the evidentiary hearing conducted on October 29, 2009, Baumgartner testified that when he hired Mr. Kelly, he and Kelly never discussed whether Kelly would represent him through appeal, that Mr. Kelly never stated his $15,000.00 fee was only for trial, and that he (Baumgartner) never told Mr. Kelly he thought he had retained Kelly through the appeal, even though he thought he had.

According to Baumgartner, "On August 1, 2008, after sentencing . . . counsel informed defendant of [the] Court's plain errors. Immediately, after being informed of these errors, defendant requested counsel . . . file an appeal. Counsel never acted upon defendant's request." (Amended Motion Under 28 U.S.C. Section 2255 to Vacate, Set Aside, or Correct Sentence, doc. 18 [hereinafter "Amended Motion"], pg. 3 (Aug. 3, 2009)). At the October 2009 evidentiary hearing, Baumgartner testified Mr. Kelly's response to him on August 1, 2008 was that they could discuss the issue later. The next day, Kelly called Baumgartner. Defendant Baumgartner testified he again asked Mr. Kelly to file an appeal,

but Kelly thought an appeal would not be successful. Baumgartner said he persisted, telling Kelly to file an appeal in any event, but Kelly changed the subject. Mr. Kelly failed to return Baumgartner's later phone calls. According to Baumgartner, he went to Kelly's office later in August 2008, and Kelly told him he had not filed a notice of appeal because there was no chance it would be successful. Baumgartner testified he was unaware of the time limits for filing an appeal.

Mr. Kelly also testified at the October 2009 evidentiary hearing. He stated he told Baumgartner at the initiation of his representation that he only represents defendants at the trial level and never handles the appeal of a case. Kelly agreed he and Baumgartner discussed the sentence immediately after the sentencing hearing. Mr. Kelly stated, however, that Baumgartner never explicitly instructed him to appeal the Court's Judgment. Later in August 2008, when Baumgartner went to Kelly's office, Kelly told Baumgartner the Court is rarely reversed on appeal on sentencing issues and, in any event, Baumgartner could not afford to hire an attorney to appeal the Judgment. Mr. Kelly testified he told Baumgartner that a win on appeal would simply mean he would go to trial on the fourteen-count Indictment, which could ultimately result in a much longer term of incarceration. Kelly told Baumgartner he could get a court-appointed attorney if he wanted to pursue an appeal, but Baumgartner did not ask for Mr. Kelly's help in obtaining an attorney to appeal the case. Even though the two discussed the possibility of an appeal, Kelly never told defendant about the ten-day deadline for filing the appeal, but Mr. Kelly reiterated Baumgartner never told him to file a notice of appeal.

On the critical issue of whether Baumgartner ever instructed Kelly to file a notice of appeal, the Court has before it only the sworn, diametrically opposed statements of the two men. Defendant has offered no more than his sworn testimony, which is directly contradicted by Kelly's sworn testimony. In this case, the Court finds defendant has failed to carry his burden of showing by a preponderance of the evidence that he told and/or instructed his attorney to file a notice of appeal. *See Montoya v.*

*Johnson*, 226 F.3d 399, 408 (5th Cir. 2000). Because the Court finds the preponderance of the evidence does not establish that defendant Baumgartner instructed his attorney to file a notice of appeal, the Court must determine whether defendant's attorney consulted with defendant regarding an appeal or was otherwise ineffective. *See Roe*, 528 U.S. at 478, 120 S.Ct. at 1035. As detailed above, both Baumgartner and Kelly agree Mr. Kelly did consult with defendant about an appeal. The difference in their testimonies is how the discussions regarding appeal ended. Baumgartner states he repeatedly told Mr. Kelly to file a notice of appeal, and Kelly states Baumgartner did not express his wishes one way or the other and did not ever explicitly instruct him to appeal. Further, Mr. Kelly testified that while he did not handle appeals he told defendant Baumgartner that he could seek to obtain a court-appointed attorney to pursue an appeal.

If Baumgartner's testimony is accepted, then there was constitutional error because Mr. Kelly did not comply with defendant's specific instructions to file an appeal. *See id.*, 120 S.Ct. at 1035. If Mr. Kelly's testimony is accepted, the issue of an appeal was discussed, Mr. Kelly provided his advice to defendant about an appeal, and defendant did not pursue the issue further with Mr. Kelly. If Mr. Kelly's testimony is accepted as credible, Mr. Kelly's performance was constitutionally sufficient because he discussed the possibility of an appeal, and defendant failed to give the attorney any specific instructions to file an appeal. *See id.*, 120 S.Ct. at 1035. Mr. Kelly was not deficient if defendant never gave "express instructions with respect to an appeal" after the two discussed an appeal. *See id.*, 120 S.Ct. at 1035. Based on the evidence, the Court cannot find counsel performed in a professionally unreasonable manner, as defendant has failed to establish he ever gave Mr. Kelly express instructions to file a notice of appeal. *See id.*, 120 S.Ct. at 1035.

Additionally, based on the antithetical testimony of the two men, it is clear one witness is not being entirely truthful. Therefore, in the alternative, the Court finds Mr. Kelly's testimony more credible

than defendant's testimony. While Mr. Kelly's professional reputation is at issue, defendant has much more to gain or lose by the outcome of this § 2255 motion. Defendant has pled guilty to and been convicted of a felony offense; Mr. Kelly came before the Court as a licensed attorney and an officer of the court. At the evidentiary hearing, the Court viewed and assessed the demeanor of both witnesses. The witness's demeanor, combined with their possible motivations, weigh against the defendant's credibility. *See Louis v. Blackburn*, 630 F.2d 1105, 1109 (5th Cir. 1980) (discussing the deference given to a judge who conducted an evidentiary hearing based a habeas corpus claim and the process of credibility determination based upon hearing and observing witness testimony). Defendant's first contention is without merit because defendant has failed to demonstrate counsel's performance was deficient.

## 2. Threat to Withdraw Representation

In claim 7(a), defendant alleges he received ineffective assistance of counsel because his attorney threatened to withdraw from representation if defendant did not sign the Plea Agreement. (Amended Motion, pg. 21). A guilty plea is constitutionally valid only if it is knowing and voluntary. *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998). Defendant does not contend his plea was unknowing; he only contends it was not voluntary, i.e., that he was coerced by counsel into signing the Plea Agreement. A defendant cannot successfully challenge the voluntariness of a guilty plea based solely upon his attorney's threat to withdraw:

> A defense attorney should make informed predictions about the consequences of either pleading guilty or going to trial. We have held that a defense lawyer's stern warnings about the client's chances of success at trial, the potential for prison time, *and the lawyer's potential withdrawal* do not compromise voluntariness.

*United States v. Cothran*, 302 F.3d 279, 284 (5th Cir. 2002) (emphasis added); *Uresti v. Lynaugh*, 821 F.2d 1099, 1101-02 (5th Cir. 1987) (holding an attorney has the right to withdraw if his client refuses to accept a plea bargain and a *duty* to inform his client of the potential for withdrawal).

Even if this claim is not governed by *Uresti*, it was waived. At the evidentiary hearing, defendant Baumgartner testified Mr. Kelly advised him to sign the Plea Agreement, but Baumgartner wanted to take the case to trial. According to Baumgartner, Mr. Kelly responded he was not going to take the case to trial because the Plea Agreement was in Baumgartner's best interest. This claim was clearly known to defendant prior to his plea of guilty and was waived by his plea. *See Tollett*, 411 U.S. at 266, 93 S.Ct. at 1608; *Glinsey*, 209 F.3d at 392. Further, at the time defendant pled guilty he stated under oath no one had threatened or tried in any manner whatsoever to force him to plead guilty, and his plea was made freely and voluntarily. *United States v. Baumgartner*, 2:08-CR-014, Rearraignment, doc. 38 [hereinafter "Rearraignment"], pg. 11 (N.D. Tex. Apr. 28, 2008; transcript filed Oct. 5, 2009). Baumgartner testified at the evidentiary hearing he understood the repercussions of signing the Plea Agreement but felt he had no other choice. Baumgartner also stated he understood he had the option to go to trial with another attorney but wanted only Mr. Kelly to represent him.

Defendant Baumgartner's statements at the guilty plea proceeding and at the evidentiary hearing as outlined above provide a sufficient basis for denial of defendant's claim 7(a). *See Hill*, 474 U.S. at 56, 106 S.Ct. at 369; *Tollett*, 411 U.S. at 266, 93 S.Ct. at 1608. Mr. Kelly's testimony before the Court provides further grounds for denial of this claim. Mr. Kelly testified he was always willing to take the case to trial. While his advice was for Baumgartner to sign the Plea Agreement, Kelly stated he never told Baumgartner he would withdraw his representation if Baumgartner did not agree to the plea bargain. Moreover, Mr. Kelly testified Baumgartner never indicated he did not want to sign the Plea Agreement.

Defendant has failed to establish Mr. Kelly threatened to withdraw from his representation if Baumgartner refused to sign the Plea Agreement. Assuming, *arguendo*, that Mr. Kelly made such a threat, Baumgartner, who graduated from college with a bachelor's of science in engineering and was working as an engineer at a nuclear power plant at the time of his arrest, indicated he understood he

could choose another attorney to represent him should Kelly withdraw. Kelly's threat to withdraw, assuming he made one, did not compromise the voluntariness of Baumgartner's guilty plea. *See Cothran*, 302 F.3d at 284. Counsel's performance was not deficient. *See Strickland*, 466 U.S. at 688, 104 S.Ct. 2052, 2064.

### 3. Failure to Present Evidence

In claim 7(b), defendant contends counsel was ineffective for failing to obtain and provide to him evidence showing he had mailed a fraudulent loan application, a fact to which Baumgartner ultimately pled guilty. This claim also precedes the guilty plea. "A voluntary guilty plea waives all nonjurisdictional defects in the proceedings against the defendant. This includes claims of ineffective assistance of counsel except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary." *Glinsey*, 209 F.3d at 392; *see Tollett*, 411 U.S. at 266, 93 S.Ct. at 1608.

Defendant contends he told his attorney he did not remember mailing anything and asked to see the government's evidence of the mailing. At the evidentiary hearing, Mr. Kelly testified he spoke with the Assistant United States Attorney (AUSA), who showed him evidence of the mailing. Kelly further stated the AUSA indicated Kelly was not to show the evidence to defendant Baumgartner, but the reason for such an instruction is unknown. At the rearraignment and guilty plea hearing, defendant agreed "[o]n or about September 14th, 2006, the mortgage application prepared by Baumgartner and containing the false and fraudulent statements was sent via the United States Postal Service from Amarillo, Texas to Garden Grove, California." *Baumgartner*, 2:08-CR-014, Rearraignment, pgs. 14, 18. Defendant also agreed he engaged in both mail and wire transactions in furtherance of his scheme and artifice to defraud a financial institution. *Id.*, pgs. 16, 18. Thus, defendant admitted at his guilty plea that he had mailed fraudulent documents. The testimony at the evidentiary hearing established there in fact was evidence defendant had mailed false documents.

Consequently, defendant has not shown how his attorney's performance was deficient. It is uncontested the attorney personally verified the evidence of mailing although he did not show the evidence to defendant at the government's request. Counsel's performance in this regard was reasonable. *See Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. Moreover, defendant does not contend his counsel's actions rendered his guilty plea involuntary. An argument of ineffective assistance of counsel based on a failure to show defendant evidence of his guilt has no merit once the defendant pleads guilty. *See Glinsey*, 209 F.3d at 392. Baumgartner swore in open court he had mailed and faxed fraudulent loan documents. He may not now claim his constitutional rights were violated because he never saw evidence of the crime to which he ultimately pled guilty. *See Tollett*, 411 U.S. at 266, 93 S.Ct. at 1608. Consequently, to the extent defendant Baumgartner is trying to argue there was no mailing, he cannot show how he was prejudiced.

On a final note, the crime to which defendant pled guilty was 18 U.S.C. § 1957, engaging in monetary transactions in property derived from specified unlawful activity. It would appear defendant violated this section when he engaged in a monetary transaction using money derived from the criminal act of mail fraud or of wire fraud. In all of his pleadings before this Court's October 2009 evidentiary hearing and at the evidentiary hearing itself, defendant's argument revolved around his contention that the government lacked evidence of a fraudulent mailing. This argument overlooks the fact that defendant also pled guilty to money laundering in furtherance of wire fraud, which, standing alone, could have provided a sufficient basis for the 18 U.S.C. § 1957 conviction.[1] *See Yeager v. United States*, 129 S.Ct.

---

[1] In his post-hearing brief, defendant, for the first time, contends the government lacked evidence of wire fraud. This argument is not well taken. First, the issue of evidence of wire fraud is waived because it was not raised in the amended § 2255 motion, and, as a result, was not discussed at the evidentiary hearing. In the Factual Resume, defendant stated he mailed and faxed falsified and fraudulent documents to the mortgage company. Nowhere does defendant indicate he ever communicated directly or in any other fashion with the mortgage company. Absent the completely new allegation that he never communicated with the mortgage company, defendant had to have either mailed or faxed the fraudulent documents. Defendant's challenge of his own guilty plea on the assertion that his attorney was ineffective for failing to show defendant the government's evidence that he faxed or mailed false documents is based not only upon an unsupported and refuted assumption but seeks relief on nothing more than a

2630, 2363, 174 L.Ed.2d 78 (2009) (referencing a case prosecuted under 18 U.S.C. § 1957 based solely upon wire fraud).

### 4. Failure to Notify Witness of Sentencing Hearing

In claim 7(c), defendant avers he received ineffective assistance of counsel because his attorney failed to inform a witness, who would have offered favorable testimony at the sentencing hearing, of defendant's sentencing date. This claim, alleged to have occurred after the guilty plea is not waived as a result of the plea. *See Tollett*, 411 U.S. at 266, 93 S.Ct. at 1608. Generally, however, "[c]omplaints based upon uncalled witnesses [are] not favored because the presentation of witness testimony is essentially strategy and thus within trial counsel's domain, and . . . speculations as to what these witnesses would have testified is too uncertain." *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985). To succeed on a claim that an attorney's failure to call a witness constituted prejudice under *Strickland*, a defendant must demonstrate the testimony would have been favorable, the witness was available and would have testified at trial, and there was a "reasonable probability that the uncalled witness would have made any difference in the result." *Id.* at 602-03.

Baumgartner contends his attorney rendered ineffective assistance by failing to call his mortgage broker, Todd Baker. Baumgartner attached to his amended motion two letters purportedly written by Baker. In the letters, Mr. Baker states he intended to testify at the sentencing hearing that there was no loss as a result of defendant's actions because defendant had made all of the loan payments in a timely manner. (Amended Motion, Exhibits Q, R). Mr. Baker stated he wanted to testify at the sentencing hearing, but Mr. Kelly failed to inform him of the hearing date. Baumgartner called Baker approximately two days before the hearing and told him the hearing was set for August 1, 2008. Mr. Baker then called Mr. Kelly, who said he would present the substance of Baker's testimony to the Court, and there was no

---

contention that was waived upon a guilty plea and waived again when it was not properly presented at the outset of the instant case. *See Glinsey*, 209 F.3d at 392.

reason for Baker to attend the hearing. At the evidentiary hearing before the undersigned, Mr. Kelly stated he initially thought Mr. Baker's testimony would be helpful but changed his opinion when the government classified the crime as money laundering, in which case Baker's testimony as to whether Baumgartner was current on the mortgage payments became irrelevant.

At the sentencing hearing, however, Mr. Kelly informed the Court the representative of the mortgage company would have stated, had he been able to attend the hearing, that the company had not lost any money and did not foresee any loss, that Baumgartner was up to date on his mortgage, that the company did not want Baumgartner incarcerated, and that the misrepresentations on the loan application did not influence whether the company would have lent Baumgartner the money. *United States v. Baumgartner*, 2:08-CR-014, Sentencing, doc. 39 [hereinafter "Sentencing Hearing"], pg. 6 (N.D. Tex. Aug. 1,2008; transcript filed Oct. 5, 2009). *The trial judge agreed there was no loss* "in that sense," but noted the charge was for money laundering. *Id.*, pg. 7.

Assuming this Court accepts the hearsay evidence in the form of the letters defendant has submitted as proof Baker would have offered favorable testimony and would have attended the hearing had he been given sufficient notice, defendant is unable to demonstrate ineffective assistance of counsel. First, defendant has not shown counsel's performance was deficient. Defendant's attorney made the strategic determination to not call Baker based upon his professional belief that (i) Baker's testimony would not be helpful and (ii) Kelly could sufficiently present to the Court the substance of Baker's testimony without calling Baker as a witness. This strategic decision was within counsel's domain, and this Court, giving strategic determinations the high level of deference they are due, cannot say such a decision rendered counsel's performance deficient. *See Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065; *Alexander*, 775 F.2d at 602.

Additionally, defendant has not shown prejudice. Even if Mr. Baker was available and would

have testified at the sentencing hearing, defendant has not demonstrated the testimony would have made any difference in the result. *See Alexander*, 775 F.3d at 602. At the sentencing hearing, the Court acknowledged Mr. Kelly's proffer of what Baker's testimony would have been. The sentencing judge also acknowledged there was no loss to the mortgage company in the sense of money owed to the loan company that the loan company would not recover. Thus, the sentencing judge effectively accepted as true the testimony Baker would have presented. Defendant cannot show prejudice in that he cannot show Mr. Baker's live testimony would have resulted in a lesser sentence.

In any event, the District Judge who will review this Report and Recommendation is the same judge who determined defendant's sentence. If the District Judge, upon review, determines the decision by counsel constituted deficient performance and further determines hearing Mr. Baker's live testimony during sentencing would have made any difference in the outcome of the sentence, then the District Judge can so find. Considering the strategic reasoning behind Mr. Kelly's decision to not call Baker at the sentencing hearing and the sentencing judge's statements at the hearing that she understood and agreed with the substance of what Baker's testimony would have been, it appears to the undersigned that Mr. Baker's live testimony would not have changed the outcome. Defendant has failed to establish counsel's assistance was ineffective. *See id.* Defendant's seventh ground of error is without merit.

### B. Incorrect Enhancement of Sentence

In his second, fourth, and fifth grounds of error, defendant contends the Court erred in enhancing his sentence. Section 2255 motions are designed to address "constitutional errors and other injuries that could not have been raised on direct appeal that will result in a miscarriage of justice if left unaddressed." *United States v. Williamson*, 183 F.3d 458, 462 (1999). A district court's failure to correctly apply the Sentencing Guidelines is an issue for direct appeal. Thus, "[m]isapplications of the Sentencing Guidelines . . . are not cognizable in § 2255 motions." *Id.*

Defendant pled guilty to engaging in monetary transactions, netting $202,113.27 as a result of a fraudulently obtained loan. Although there was ultimately no loss to the mortgage company, defendant took $175,000.00 of this money out of his Wells Fargo account and deposited it into a casino account at Caesar's Palace in Las Vegas, Nevada. Approximately one week later, he re-deposited the $175,000.00 back into the Wells Fargo account.

Defendant avers the Court incorrectly applied § 2B1.1(b)(1) of the Sentencing Guidelines to enhance his base offense level by twelve points. In his second claim, defendant points out that, at the time of sentencing, he was current on his loan payments and had over $350,000.00 of equity in the property. Therefore, defendant contends, the Court improperly enhanced his sentence for a loss involving an amount of more than $200,000.00 because the loan company suffered no actual loss. In his fourth claim, Baumgartner contends the Court should have deducted the fair market value of the collateral from any loss. Had the Court done so, there would not have been a loss to enhance defendant's base level offense. In his fifth claim, Baumgartner maintains the Court erred when it enhanced his sentence based on a loss of more than $200,000.00 (under Sentencing Guideline § 2B1.1(b)(1)(G)) instead of a loss of more than $120,000.00 (under Sentencing Guidelines § 2B1.1(b)(1)(F)). Baumgartner contends the latter was the appropriate sentencing provision because he only transferred $175,000.00 of the money between his accounts. He states the Court's failure to apply § 2B1.1(b)(1)(G) violated the Plea Agreement he signed. These claims are presented as sentencing guidelines errors by the Trial Court and were not presented as claims of ineffective assistance of counsel.

All of these claims could have been raised on direct appeal. While defendant has presented his claims of ineffective assistance of counsel as an excuse for his failure to appeal, those claims are without merit. He has not presented an acceptable explanation to excuse his procedural default in failing to directly appeal the Judgment. *See United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991).

Defendant's claims related to a misapplication of the Sentencing Guidelines (the second, fourth, and fifth claims) are not cognizable in this § 2255 motion. *See Williamson*, 183 F.3d at 462.

## C. Imposition of Restitution

In his third claim, defendant asserts the Court erred by ordering him to pay restitution. Defendant Baumgartner argues because the loan company did not suffer a loss, there is no victim to whom the Court can award restitution, and awarding restitution to a victim who did not suffer a loss is error. Defendant's claim of error with respect to restitution, however, is not cognizable. Section 2255 provides relief only for those claiming their custody is unlawful. *United States v. Hatten*, 167 F.3d 884, 887 (5th Cir. 1999). The section cannot be used to provide relief for those claiming the imposition of a fine is unlawful. *Id.* Thus, "complaints concerning restitution may not be addressed in § 2255 proceedings." *Id.*

In this case, defendant failed to raise this argument in a direct appeal and, as discussed above, he has failed to show cause for his procedural default. *See Shaid*, 937 F.2d at 232. Rather, Baumgartner challenges the restitution for the first time on collateral review by this § 2255 motion. Since the imposition of restitution does not relate to Baumgartner's custody, *see Hatten*, 167 F.3d at 887, his attack on the restitution order is not cognizable, and the Court does not have jurisdiction to address it. *See id.* To the extent this claim may have merit or may not appear to be frivolous, a finding this Court does not make, does not alter the fact that the Court is barred by both statutory and case law from addressing the issue in the instant motion. Defendant's third claim is not cognizable on § 2255 review.

## D. Error by Department of Justice

In his sixth claim, defendant alleges the United States Department of Justice (DOJ) violated the Court's restitution order by failing to recognize the Court's payment and commencement schedule. Specifically, defendant states the DOJ incorrectly told the Department of the Treasury to include defendant in the Treasury Offset Program. As a result, the Department of the Treasury seized over

$13,000.00 the federal government owed to defendant's wife. As discussed above, only claims relating to the lawfulness of custody are cognizable on a § 2255 motion. *Id.* This claim is not cognizable in this § 2255 motion. *See id.*; 26 U.S.C. § 6402(g).

## E. Conclusion

Defendant's main challenge is to the restitution order entered in his case, and the Court is prohibited from considering the restitution issue in a § 2255 motion. Instead, the only claims properly before the Court are the claims of ineffective representation by defendant's attorney. Were this Court to find ineffective assistance of counsel with respect to the direct appeal issue, the remedy would be to grant defendant an out-of-time appeal and defendant could then raise the restitution issue on direct appeal. Stated differently, the Court cannot grant defendant an out-of-time appeal to allow him to present the restitution issue without first finding ineffective assistance of counsel. A defendant seeking to establish ineffective assistance of counsel in a § 2255 motion has a difficult burden, as all the presumptions are heavily in favor of the attorney. *See Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.

The evidence before the Court does not warrant a finding of ineffective assistance of counsel regarding the failure to take a direct appeal. In comparison to counsel's testimony, defendant's testimony is not entirely credible. Defendant Baumgartner has failed to produce evidence of his ineffective assistance of counsel claims sufficient to establish, by a preponderance of evidence, that his Sixth Amendment rights were violated. *See Montoya*, 226 F.3d at 408. Defendant did not carry his burden of proof, and the claim of ineffective assistance of counsel is without merit.

Additionally, defendant never raises in his original or amended § 2255 motion any argument regarding whether the trial court failed to advise defendant of his notice of appeal or of the time limits regarding notice of appeal. While defendant alludes to such an issue in a motion he filed after the evidentiary hearing, the issue has never been part of his § 2255 motion or his amended § 2255 motion

to vacate and has not been properly presented for the Court's review. (Change of Defendant's Address and Continued Requests for New Trial and Out-of-Time Appeal Pursuant to Defendant's Amended Motion Under 28 U.S.C. Section 2255 and Evidentiary Hearing, doc. 43, pg. 1 (March 17, 2010)). Consequently, the Court does not evaluate the factual basis or merits of that claim.

IV.
RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge that the Motion to Vacate, Set Aside, and Correct Sentence, filed by defendant JOHN JOSEPH BAUMGARTNER, be DENIED.

V.
INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 3rd day of August, 2011.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

# * <u>NOTICE OF RIGHT TO OBJECT</u> *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).